UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-361-GWU

MARCELLA ABNER,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                       DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of

1

07-361  Marcella Abner

       impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

      Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

2

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

07-361  Marcella Abner

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

07-361  Marcella Abner

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

6

07-361  Marcella Abner

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Marcella Abner, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of an adjustment disorder with depressed mood, obesity, right hip and foot bursitis, low back pain due to degenerative disc disease of the lumbosacral spine, osteoarthritis of the knees, and carpal tunnel syndrome of the left wrist.  (Tr. 492).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Abner retained the residual functional capacity to perform a significant number of medium level jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 493-7).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 59-year-old woman with a high school education and past relevant work as an unskilled cashier and a semiskilled data entry person (Tr. 297, 553, 566), could perform any jobs if she were limited to lifting 50 pounds occasionally and 25 pounds frequently, and also had the following non-exertional restrictions (Tr. 566).  She: (1) could occasionally bend, twist, kneel, crouch, crawl, and climb ramps and stairs; (2) could occasionally flex and extend her wrists and operate foot pedal controls; (3)

7

could not work at heights or around industrial hazards; (4) required work with simple, repetitive procedures, no frequent changes in work routines, no detailed or complex problem solving, and no independent planning or setting of goals; and (5) could engage in only occasional interaction with coworkers, supervisors, or the general public.  (Tr. 566-7).  The VE responded that such a person could perform the jobs of machine operator and "medium security guard," and proceeded to give the numbers in which the positions existed in the state and national economies.  (Tr. 567-8).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to a back injury and depression.  (Tr. 291). Her treating family physician, Dr. W. Clark Bailey, supplied two opinions regarding her physical abilities.  In a form completed January 13, 2004, Dr. Bailey stated that the plaintiff had depression, bursitis, and degenerative joint disease and limited her to lifting a maximum of 15 pounds occasionally and 5 pounds frequently, in addition to having numerous additional non-exertional restrictions.  (Tr. 387-90). Subsequently, on May 18, 2005, Dr. Bailey restricted lifting and carrying to no more than 4 to 5 pounds, with additional restrictions including poor or no ability to make all occupational adjustments. (Tr. 450-3).  The ALJ rejected Dr. Bailey's restrictions on the grounds that the physician had not performed a complete history and

8

physical examination.  (Tr. 494).  He also noted that the physician had indicated that Mrs. Abner needed to lose weight.  Noting that state agency medical consultants had concluded that she could perform "medium" level exertion, the ALJ stated that Dr. Bailey's assessment was not supported by objective clinical or diagnostic findings and was inconsistent with his own medical evidence as well as other substantial evidence in the file.  (Id.).

The plaintiff objects that Dr. Bailey had actually indicated that he did not do a full workup on the date he filled out the most recent form, but due to a partial examination showing that she had "quite a bit of pain with forward flexion and  with retroflexion of her back," as well as a positive straight leg raising test.  (Tr. 456). The court notes that the ALJ was correct to say that the physician had emphasized the importance of weight loss, and he also indicated that she needed a "good head to toe exam including an MRI of her spine at the very least."  (Id.).  As the plaintiff indicates, however, Dr. Bailey had treated the plaintiff since May, 1985 and was in an ideal position to provide a longitudinal evaluation of her condition, which is the primary rationale of the treating physician rule. 20 C.F.R. Section 404.1527 (d)(2).The fact that Dr. Bailey had not performed a complete physical evaluation on the date he completed the form with his most recent restrictions is a somewhat misleading reason for discounting the opinion of a physician who had treated the

claimant for decades. It also obscures the fact that Dr. Bailey had found abnormalities the day he completed the form.

Moreover, in the present case, the medical opinions contradicting Dr. Bailey's conclusions are problematical. The only other physical examination in the transcript after the plaintiff's alleged onset date was conducted by Dr. Thadis Cox on October 14, 2003. (Tr. 352). Dr. Cox found that the plaintiff weighed 224 pounds at a height of 66.4 inches and had a decreased range of motion of her left hip secondary to pain as well as a decreased range of motion and spasm of her lumbar spine. (Tr. 353-4). There was a mild impairment in toe and heel walking, and Mrs. Abner had moderate difficulty getting on and off the examination table. (Tr. 354). In addition to his physical examination, Dr. Cox reviewed x-rays of the lumbosacral spine showing osteophyte formation throughout and compromise of the disk space at L5-S1. (Id.). In his opinion, there was evidence for a "moderate" restriction in the plaintiff's tolerance for stooping, bending, reaching, standing, moving about, lifting, carrying, handling objects, and traveling. (Tr. 354-5). He did not quantify the extent of the restrictions.

Dr. James E. Ross, a state agency physician, reviewed the evidence as of November 7, 2003, prior to the receipt of even the first of Dr. Bailey's opinions. While he checked boxes indicating that the plaintiff could lift 50 pounds occasionally and 25 pounds frequently, occasionally balance, stoop, crawl and climb ladders,

07-361  Marcella Abner

ropes, and scaffolds, based on the report of Dr. Cox, he also reviewed Mrs. Abner's subjective complaints, including her statement that she could hardly walk, and noted that they were credible.  (Tr. 375-83).  Dr. Timothy Gregg affirmed Dr. Ross's opinion without additional comment on February 19, 2004.  (Tr. 413-18).

Clearly, there are several problems with the restrictions given by the state agency physicians.  Most obviously, it would appear that both the treating physician and Dr. Ross felt that the plaintiff's complaints were credible.  While the credibility of a claimant is ultimately a decision to be made by the ALJ, Dr. Ross's apparent statement that Mrs. Abner's subjective complaints, including that she could hardly walk, was credible, unaccompanied by an explanation for failing to place any significant restriction on walking or standing, creates a conflict that undermines the reliability of his opinion.  If Mrs. Abner is credible, then Dr. Ross's restrictions make little sense.

In addition to the conflict over credibility, neither of the state agency physicians had the opportunity to review the opinions given by Dr. Bailey.  The Sixth Circuit has held that while the opinion of a non-examining physician may be accepted over that of an examiner, the non-examiner must have had access to the entire record, and clearly explain the reasons for his difference of opinion.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  Social Security Ruling 96-9p also

11

07-361  Marcella Abner

emphasizes the importance of non-examining sources having a complete case record available for review.

The plaintiff additionally objects to the vocational testimony on appeal.  She asserts that the job of machine operator would not have been available, as found by the ALJ.  While the VE initially appeared to indicate that the specific vocational preparation (SVP) level of this position would be inconsistent with simple, repetitive work, as required in the hypothetical question, the VE clarified that it was in fact "an entry-level job that a person could walk in and perform" (Tr. 568), and on examination by counsel for the plaintiff reiterated that the job was an entry-level position (Tr. 570).  She appeared to explain the reason for her initial hesitation by saying that an SVP of 3, required by the machine operator position, was more complex than the one in two-step tasks required at the SVP 1 and 2 levels, and it was "not exactly a three-step task...you can learn it within six weeks typically" and "[m]ost of the job is just common sense."  (Id.).  Based on this testimony, the ALJ could reasonably have found that the machine operator position was within the limitations of the hypothetical question. Therefore, this argument was without merit.

The plaintiff notes that the VE identified the wrong section of the <u>Dictionary of Occupational Titles</u> (DOT) as conforming to the position of security guard.  The plaintiff concedes that there is a DOT section which reflects a security guard job as contemplated by the VE, at 372.667-038, but notes that it is a "light" level job.  As

12

07-361  Marcella Abner

such, it would be of questionable value in carrying the defendant's burden of showing that there are a significant number of medium jobs which the plaintiff can perform, given that an individual of her age, education, and work experience would be disabled under the Commissioner's Medical-Vocational Guidelines (the "grids") if she were limited to less than medium level exertion.  The defendant may accept VE testimony that is in conflict with the DOT, see, e.g., Conn v. Secretary of Health and Human Services, 51 F.3d 607, 610 (6th Cir. 1995), however, so the definition in the DOT is not necessarily binding. This is an issue that can be clarified on remand if the plaintiff wishes to do so.

The decision will be remanded for further consideration.

This the 30th day of October, 2009.

Signed By:

**G. Wix Unthank**

**United States Senior Judge**